O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| SUSAN SCARAFIA, | ) | Case No. CV 08-07263 (MLG) |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Susan Scarafia ("Plaintiff") seeks judicial review of the Commissioner's denial of her application for disability insurance benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is reversed, and this action is remanded for further proceedings.

I.   BACKGROUND

Plaintiff was born on November 3, 1961. (Administrative Record ("AR" at 48). She has a college education and relevant work experience

1

1  as an account manager, vice president of strategic marketing,

2  administrative assistant, and marketing consultant. (AR at 25, 93).

3      Plaintiff filed an application for DIB on March 15, 2006. (AR at

4  18, 48-50). Plaintiff claimed that she had been disabled since December

5  15, 2002, due to Epstein-Barr virus, fatigue and "brain fog." (AR at 68,

6  102, 105).

7      Plaintiff's application was denied initially and on

8  reconsideration. (AR at 36-37, 39-41). A *de novo* hearing was held before

9  an Administrative Law Judge ("ALJ"). (AR at 344-72). Plaintiff

10 represented herself and testified at the hearing. *Id.* In a decision

11 issued on March 18, 2008, the ALJ determined that Plaintiff was not

12 disabled and not entitled to DIB. (AR at 18-26). The ALJ found that

13 Plaintiff: (1) did not engage in substantial gainful activity during the

14 period from her alleged onset date of disability of December 5, 2002,

15 through her date last insured of December 31, 2005 (step 1); (2) suffers

16 from the severe impairment of chronic fatigue (step 2); (3) does not

17 have any impairments that meet or equal a listed impairment (step 3);

18 (4) has the residual functional capacity to perform a range of sedentary

19 work;[1] (5) is able to perform her past work as an account manager, vice

20 president of strategic marketing, administrative assistant, and

21 marketing consultant; and (6) is able to perform other work that exists

22 in significant numbers in the economy, including work as an inspector,

23 assembler, and stuffer. (AR at 20-26).

24 //

25

26 _____

27      [1]  Specifically, the ALJ found that Plaintiff could occasionally
    perform postural activities, but that Plaintiff should not climb ropes,
    scaffolds, or ladders, and should avoid workplace hazards such as moving
28  machinery and heights. (AR at 22).

1    On September 5, 2008, the Appeals Council denied review. (AR at 3-
2    6). Accordingly, the ALJ's decision is the final decision of the
3    Commissioner.  (AR at 3).

4    Plaintiff filed the present Complaint on November 3, 2008, seeking
5    judicial review of the ALJ's decision denying benefits. The parties
6    filed a Joint Stipulation of disputed issues ("JS") on April 27, 2009.
7    Plaintiff claims that the ALJ improperly rejected the opinion of
8    Plaintiff's treating physician. The Commissioner disagrees. Plaintiff
9    seeks reversal of the ALJ's decision and remand for a payment of
10   benefits or, in the alternative, remand for a new administrative
11   hearing. (JS at 16). The Commissioner requests that the final decision
12   of the Commissioner be affirmed. (JS at 16). The Joint Stipulation has
13   been taken under submission without oral argument.

14

15   **II.   STANDARD OF REVIEW**

16   Under 42 U.S.C. § 405(g), a district court may review the
17   Commissioner's decision to deny benefits. The Commissioner's or ALJ's
18   decision must be upheld unless "the ALJ's findings are based on legal
19   error or are not supported by substantial evidence in the record as a
20   whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Parra v.*
21   *Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means
22   such evidence as a reasonable person might accept as adequate to support
23   a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark*
24   *v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a
25   scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*,
26   466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial
27   evidence supports a finding, the reviewing court "must review the
28   administrative record as a whole, weighing both the evidence that

1 supports and the evidence that detracts from the Commissioner's

2 conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If

3 the evidence can support either affirming or reversing the ALJ's

4 conclusion," the reviewing court "may not substitute its judgment for

5 that of the ALJ." *Robbins*, 466 F.3d at 882.

6

7 **III.   DISCUSSION**

8     Family practitioner Kelly Perkins, M.D. began treating Plaintiff

9 for chronic fatigue syndrome, Epstein-Barr virus ("EBV"), and muscle

10 pain in October 2003. (AR at 247). In December 2003, Plaintiff returned

11 to Dr. Perkins with continued complaints of chronic fatigue. (AR at

12 246).

13     In an Attending Physician's Statement dated January 20, 2004, Dr.

14 Perkins reported that Plaintiff suffered from fatigue and "brain fog."

15 (AR at 201). On average, Plaintiff would sleep and/or rest 18 hours a

16 day. (AR at 201). Dr. Perkins opined that Plaintiff's ability to perform

17 her former work as a marketing consultant was impaired by her fatigue

18 and inability to think at a high level. (AR at 201). Despite noting

19 Plaintiff's impaired ability to work, Dr. Perkins did not actually

20 restrict Plaintiff from performing any of the work activities associated

21 with her former work. (AR at 200).

22     In May 2004, Plaintiff began complaining of short-term memory loss.

23 (RT at 152). Dr. Perkins recommended a number of lab tests. (AR at 152).

24     In October 2004, Plaintiff told Dr. Perkins that she was having

25 difficulty sleeping and felt like she was in a "brain fog." (AR at 151).

26 Dr. Perkins prescribed a stimulant (Ritalin), a sleep aid (Sonata) and

27 a narcotic analgesic (Tylenol with codeine). (AR at 151).

28 //

1        In February 2005, Plaintiff reported that she was experiencing
2   marital problems and shoulder pain after swimming. (AR at 150). Dr.
3   Perkins advised Plaintiff to avoid activities that aggravated her pain.
4   (AR at 150). Dr. Perkins also added an anti-anxiety medication (Valium)
5   to Plaintiff's treatment plan. (AR at 150).

6        In April 2005, Plaintiff complained of intermittent back pain,
7   indigestion, fatigue, insomnia, and marital problems. (AR at 149). Dr.
8   Perkins began prescribing an anti-reflux medication and advised
9   Plaintiff to slowly increase the amount of her exercise. (AR at 149).

10       In July 2005, Dr. Perkins completed a second Attending Physician's
11  Statement. (AR at 187). Dr. Perkins opined that Plaintiff was "totally
12  disabled" and unable to perform her former work or any other work. (AR
13  at 187). Dr. Perkins explained that Plaintiff's chronic fatigue syndrome
14  and EBV caused Plaintiff to experience "extreme fatigue." (AR at 187).
15  Dr. Perkins cited Plaintiff's positive EBV test results as objective
16  evidence in support of her opinion. (AR at 187).

17       In October 2005, Plaintiff reported that she was experiencing
18  "mental lethargy" in the mornings, "brain fog," fatigue, and muscle
19  aches. (AR at 148). Dr. Perkins ordered additional lab tests and
20  prescribed vitamin B12. (AR at 148). In her third Attending Physician's
21  Statement, Dr. Perkins noted that Plaintiff suffered from "brain fog"
22  and fatigue, which was in the "7-10" range of severity. (AR at 182).
23  While Dr. Perkins did not restrict Plaintiff from performing her former
24  work activities as a marketing consultant, Dr. Perkins noted that
25  Plaintiff's condition was chronic. (AR at 183). Dr. Perkins further
26  reported that Plaintiff was not able to work in another occupation. (AR
27  at 183).
28  //

1    In April 2006, Dr. Perkins completed her fourth Attending
2  Physician's Statement. (AR at 180-81).[2] Once again, Dr. Perkins opined
3  that Plaintiff suffered from chronic fatigue syndrome and EBV. (AR at
4  180). Dr. Perkins cited Plaintiff's lab results and positive EBV
5  findings in support of her diagnosis. (AR at 180).

6    In August 2006, Dr. Perkins completed her fifth Attending
7  Physician's Statement. (AR at 173-75). As in her first and third
8  Attending Physician's Statement, Dr. Perkins did not restrict Plaintiff
9  from performing her former work activities as a marketing consultant.
10 (AR at 174). However, Dr. Perkins indicated that Plaintiff's condition
11 was chronic and that Plaintiff could not work in another occupation. (AR
12 at 174).

13    Plaintiff claims that the ALJ improperly rejected Dr. Perkins's
14 opinion that Plaintiff was unable to perform her former work or any
15 other work due to her chronic fatigue syndrome, EBV, and extreme
16 fatigue. (JS at 5 (citing AR at 187)). The Court agrees with Plaintiff.

17    An ALJ must accord special weight to a treating physician's opinion
18 because she has a "greater opportunity to know and observe the patient
19 as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.
20 1989). If the treating physician's opinion is uncontroverted, it may be
21 rejected only for clear and convincing reasons. *Reddick*, 157 F.3d at
22 725; *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If it is
23 contradicted by the opinion of another doctor, the treating physician's
24 opinion may only be rejected if the ALJ provides specific and legitimate
25 reasons supported by substantial evidence. *Tonapetyan v. Halter*, 242

26

---

27    [2]   It appears that the Attending Physician's Statement was
28 originally three pages long. (AR at 180-81). However, the record
   contains only the first and third pages of this report. (AR at 180-81).

1  F.3d 1144, 1148 (9th Cir. 2001); *Reddick*, 157 at 725.

2       Here, the ALJ rejected Dr. Perkins's opinion without providing

3  adequate reasons for doing so. First, the ALJ discredited Dr. Perkins's

4  opinion that Plaintiff was unable to perform her former work or any

5  other work because the issue of disability is a decision reserved to the

6  Commissioner. (AR at 25). It is true that Dr. Perkins's opinion on the

7  ultimate issue of disability is not conclusive because the statutory

8  definition of disability is a legal conclusion reserved to the

9  Commissioner. *See* 20 C.F.R. § 404.1527(e)(1); *see also* Social Security

10 Ruling 96-5P ("The regulations provide that the final responsibility for

11 deciding [whether an individual is 'disabled' under the Act] ... is

12 reserved to the Commissioner"); *Magallanes*, 881 F.2d at 751. However,

13 the fact that Dr. Perkins rendered such an opinion does not constitute

14 a clear and convincing or specific, legitimate reason for rejecting her

15 opinion. *See, e.g., Reddick*, 157 F.3d at 725; *Embrey v. Bowen*, 849 F.2d

16 418, 421-22 (9th Cir. 1988). Dr. Perkins treated Plaintiff for chronic

17 fatigue syndrome and EBV over a three-year period. She conducted

18 numerous examinations, made clinical observations and ordered laboratory

19 tests. She noted that Plaintiff suffered from extreme fatigue and that

20 her condition was chronic. Thus, Dr. Perkins's findings and conclusions

21 were entitled to deference. 20 C.F.R. § 404.1527(d)(2). While Dr.

22 Perkins's opinion that Plaintiff was totally disabled was somewhat

23 conclusory, it did not relieve the ALJ of his obligation to state

24 adequate reasons for rejecting it.

25      Next, the ALJ asserted that "the very limited evidence in the

26 record does not fully support Dr. Perkins' statements." (AR at 25). A

27 conclusory statement such as this does not constitute a sufficient basis

28 for rejecting the opinion of a treating physician. *See Reddick*, 157 F.3d

1  at 725 ("The ALJ must do more than offer his conclusions[;][h]e must set

2  forth his own interpretations and explain why they, rather than the

3  doctors'[] are correct"); *Embrey*, 849 F.2d at 421-22) ("To say that

4  medical opinions are not supported by sufficient objective findings ...

5  does not achieve the level of specificity our prior cases have required

6  ...."). If the ALJ thought he needed to know the basis for Dr. Perkins's

7  findings in order to better evaluate them, he had a duty to conduct an

8  appropriate inquiry by submitting further questions to her. *Smolen v.*

9  *Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

10       The Commissioner claims that Dr. Perkins did not find that

11  Plaintiff was disabled for a continuous 12-month period, despite her

12  July 2005 opinion that Plaintiff was totally disabled. (JS at 13-14; AR

13  at 187). In particular, the Commissioner notes that when Dr. Perkins

14  completed her first, fourth, and fifth Attending Physician Statements,

15  she did not restrict Plaintiff from performing any of her former work

16  activities. (AR at 174, 183, 200). Therefore, the Commissioner argues

17  that Dr. Perkins found that Plaintiff was only temporarily disabled. (JS

18  at 13-14). The ALJ, however, did not identify the apparent inconsistency

19  in Dr. Perkins's reports as a basis for rejecting her opinion or denying

20  benefits. This Court's review is confined to the reasons supplied by the

21  ALJ. *Ceguerra v. Secretary of Health & Human Services,* 933 F.2d 735, 738

22  (9th Cir. 1991) ("[a] reviewing court can evaluate an agency's decision

23  only on the grounds articulated by the agency") (citing *SEC v. Chenery*

24  *Corp.*, 332 U.S. 194, 196 (1947)). Furthermore, to the extent Dr.

25  Perkins's reports were ambiguous or inconsistent, the ALJ had an

26  obligation to seek clarification from her. 20 C.F.R. § 404.1512(e)(1)

27  ("We will seek additional evidence or clarification from your medical

28  source when the report from your medical source contains a conflict or

1  ambiguity that must be resolved, the report does not contain all the
2  necessary information, or does not appear to be based on medically
3  acceptable clinical and laboratory diagnostic techniques."); *see also*
4  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (explaining
5  that an ALJ is required to recontact a doctor if the doctor's report is
6  ambiguous or insufficient for the ALJ to make a disability
7  determination).

8       In summary, the ALJ erred by failing to provide sufficient reasons
9  supported by substantial evidence in the record for rejecting Dr.
10 Perkins's opinion.

11

12 **IV.   CONCLUSION**

13      As a general rule, remand is warranted where additional
14 administrative proceedings could remedy defects in the Commissioner's
15 decision. *See Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In
16 this case, remand is appropriate to properly consider Dr. Perkins's
17 opinion and fully develop the record.

18

19                              **ORDER**

20      Accordingly, IT IS HEREBY ORDERED that the decision of the
21 Commissioner is reversed and this action is remanded for further
22 proceedings consistent with this Memorandum Opinion.

23

24 Dated: May 15, 2009
25                              _____
26                              Marc L. Goldman
                               United States Magistrate Judge
27

28